IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | 4:22-cr-083 |
| v. | ) ) | |
| RICHARD THOMAS BALL, | ) ) ) ) ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| Defendant. | | |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ADVISORY GUIDELINE RANGE .................................................................................. 4

THE § 3553(a) FACTORS SUPPORT A GUIDELINE SENTENCE OF 480
MONTHS' IMPRISONMENT ........................................................................................... 5
   A.  Nature and Circumstances of the Offenses ............................................. 6
   B.  History and Characteristics; The Need to Protect the Public ................ 10
   C.  The Need for the Sentence to Reflect the Seriousness of the Offense, to
       Promote Respect for the Law and to Provide Just Punishment ............. 13

CONCLUSION ................................................................................................................. 14

## **INTRODUCTION**

Defendant operated as a sex trafficker, a child sex abuser, and a drug dealer in Des Moines. He victimized several minor and adult females; the number of individuals Defendant exploited distinguishes him from other offenders who have come before this Court. His goal was always the same—to manipulate children and women for his own gain, whether that be sexual pleasure, financial enrichment, or both. By the time Defendant committed these offenses in his forties, his criminal

1

record already established he was an abuser. A sentence of 480 months' imprisonment is the only sentence sufficient to address the sentencing objectives set forth under Title 18, United States Code, Section 3553(a).

## BACKGROUND

In June 2022, Defendant Richard Thomas Ball was arrested pursuant to a criminal complaint charging him with sexual exploitation and attempted sexual exploitation of Minor Victim 1 and various controlled-substance offenses. (R. Doc. 1.) Later that same month, a grand jury sitting in the Southern District of Iowa returned an eight-count indictment charging Defendant with a myriad of sexual exploitation offenses concerning Minor Victim 1 as well as controlled-substance offenses. (R. Doc. 19.) Ultimately, in February 2023, the grand jury returned a 17-count second superseding indictment. (R. Doc. 60.) The second superseding indictment charged Defendant with the following offenses:

- As to Minor Victim 1, sexual exploitation and attempted sexual exploitation of a child (Count 1); enticement and attempted enticement of a minor (Count 2); receipt of child pornography (Count 3); transfer and attempted transfer of obscene matter to another individual who was less than 16 years of age (Count 4); possession of child pornography (Count 5); and distribution of a controlled substance to a person under the age of 21 (Count 8);
- As to Victim 1, sex trafficking by force, fraud, and coercion (Count 9);
- As to Victim 2, sex trafficking by force, fraud, and coercion (Count 10); and kidnapping (Count 11);

- As to Victim 3, sex trafficking by force, fraud, and coercion (Count 12);

- As to Minor Victim 2, sexual exploitation and attempted sexual exploitation of a child (Count 14); and distribution of a controlled substance to a person under the age of 21 (Count 15);

- As to Minor Victim 3, enticement and attempted enticement of a minor (Count 16); and distribution of a controlled substance to a person under the age of 21 (Count 17);

(R. Doc. 60.) In total, Defendant was charged with committing 10 sex-related offenses against six different victims, three of whom were minors. Additionally, Defendant was charged with six controlled-substance offenses (Counts 6, 7, 8, 13, 15 and 17); and one count of conspiracy, all of which were connected to the sex related offenses. (*Id.*) The second superseding indictment included three notices of forfeiture. (*Id.*)

In June of 2023, Defendant entered guilty pleas to the following counts:

- Count 1 - Sexual exploitation and attempted sexual exploitation of Minor Victim 1;

- Count 6 – Conspiracy to distribute marijuana;

- Count 9 – Sex trafficking of Victim 1 by force, fraud, and coercion;

- Count 10 – Sex trafficking of Victim 2 by force, fraud, and coercion;

- Count 11 – Kidnapping of Victim 2;

- Count 12 – Sex trafficking of Victim 3 by force, fraud, and coercion.

(R. Doc. 79.) In the factual basis for the plea agreement, Defendant admitted to coercing, and attempting to coerce, Minor Victim 2 to engage in sexually explicit

conduct to produce child pornography and Minor Victim 3 to engage in criminal sexual activities. (*Id.* at 20-22.) The government agreed to dismiss Counts 2, 3, 4, 5, 7, 8, 13, 14, 15, 16 and 17 at sentencing. (*Id.* at 2, ¶ 2.)

As part of the plea agreement, the parties entered two sentencing stipulations:

1. The applicable advisory guideline range is 360 months to life imprisonment (*Id.* at 6-8, ¶ 11); and

2. A joint recommendation pursuant to Rule 11(c)(1)(C) that the Court should impose a term of imprisonment no less than 240 months and no greater than 480 months of imprisonment. (*Id.* at 9-10, ¶ 16.)

Sentencing is scheduled for October 24, 2023. The issue before the Court is imposition of a sentence that is sufficient but not greater than necessary.

## ADVISORY GUIDELINE RANGE

In the presentence report, the United States Probation Office (USPO) calculated an advisory guideline range of life imprisonment. (R. Doc. 97 at 78, ¶ 442.) Both Defendant and the United States objected to that calculation, asserting the advisory guideline range is 360 months to life imprisonment. (R. Doc. 95, 96.) Additionally, Defendant lodged a number of legal objections as to the USPO's application of the guidelines. (R. Doc. 95.)

Pursuant to the parties' plea agreement, which this Court accepted, the parties have stipulated, and recommend to this Court, that the applicable advisory guidelines range is 360 months to life in prison, and that this Court should impose a term of imprisonment "no less than 240 months and no greater than 480 months."

4

(R. Doc. 79, at 6-10, ¶¶ 11, 16.) The government recognizes that the PSR concludes that Defendant's advisory range is life. The government has objected to that conclusion and respectfully requests that the Court reject it. The parties' sentencing stipulations in the plea agreement were the result of several rounds of negotiations. The stipulations reflect the parties' views on the sentencing guidelines and the relevant factors under 18 U.S.C. § 3553. Those stipulations account specifically for, among other things, the advisory guidelines, the nature and circumstances of Defendant's offenses, Defendant's history and characteristics, and Defendant's willingness to accept responsibility by entering into a plea agreement in lieu of proceeding to trial.

Accordingly, the parties jointly recommend that the advisory guidelines range is 360 months to life, and that the Court use that range in determining which sentence to impose in this case.

### THE § 3553(a) FACTORS SUPPORT A GUIDELINE SENTENCE OF 480 MONTHS' IMPRISONMENT

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;

2. the need for the sentence imposed –

    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B. to afford adequate deterrence to criminal conduct;

    C. to protect the public from further crimes of the defendant; and

       D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the guideline sentencing range;

5. any pertinent policy statement;

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

The § 3553(a) factors necessitate a guideline-sentence of 480 months' imprisonment. The nature and circumstances of the instant offenses, taken with Defendant's history and characteristics, demonstrate that he has used his life to exploit, victimize, threaten, and abuse others. The requested sentence, which will imprison him until his eighties, is required to protect the public from further offenses.

    A.    *Nature and Circumstances of the Offenses.*

Defendant's insidious and prolonged exploitation of the victims in this case is extensively documented in the PSR. *See generally* PSR pp. 8-48, ¶¶ 19-261. Defendant's abuse involved psychological, sexual, and physical components. He tailored his methods to coerce each victim.

For nearly all victims, Defendant began romantic relationships with them, professing his love and promising partnership in order to gain their affection and trust. *See* PSR pp. 11-12, ¶ 37(c) (MV1); p. 13, ¶ 46 (K.D.); p. 21, ¶ 109(c) (MV3); p. 26, ¶ 131(b)(1) (K.R.); pp. 26-27, ¶ 136 (F.S.); pp. 34, 36, 37, ¶¶ 189, 196, 200 (H.G.); p. 42, ¶ 226 (C.O.). From there, he deployed different methods, depending on the

victim, to obtain sex, money, or both. For example, to groom minor victims for sexual encounters, Defendant provided access to drugs, including marijuana and ecstasy, *see, e,g.,* PSR p. 12, ¶ 41 (MV1); pp. 16-17, ¶¶ 78, 84 (MV2); p. 19, ¶ 93 (MV3), and sought sexual contact when they were alone, *see, e.g.,* PSR pp. 17-18, ¶¶ 78-85 (MV2); p. 19, ¶ 93 (MV3). For several of the adult female victims, Defendant presented engaging in commercial sex acts as a way he was helping them with their financial troubles, *see, e.g.,* PSR pp. 33-34, ¶183 (F.S.); p. 35, ¶¶ 190-192 (H.G.) and/or a way the victim could demonstrate her love for him by earning money for him, *see, e.g.,* PSR pp. 25-26, ¶¶ 131-132 (K.R.); pp. 17-33, ¶¶ 77-182 (F.S.); pp. 35-37, ¶¶ 194-202 (H.G.).

If a victim resisted, Defendant reacted with verbal threats and physical violence to force the victim's compliance. For example, Defendant told Minor Victim 3 that, if she did not allow him to sexually abuse her, Defendant would go after her younger sister. (PSR pp. 19-20, ¶¶ 95, 102.) Defendant threatened to beat and kill several of his victims, including Minor Victim 3 (PSR p. 20, ¶ 102), F.S. (pp. 27-28, 32, ¶¶ 143, 174), H.G. (pp. 34, 36, ¶¶ 187, 197), H.C. (pp. 39-40, ¶¶ 211, 212), and C.O. (p. 41, ¶ 222). The amount and level of violence Defendant used against his victims is harrowing.

- Shortly after Minor Victim 3 turned 17, Defendant choked and assaulted her when he found hickies on her neck from a person besides Defendant. (PSR p. 20, ¶ 103.)

- In December 2020, Defendant "severely beat K.R." by "stomp[ing] on her throat and ribs and hit[ting] her in the face, leaving K.R. with facial bruising and black eyes that lasted for months." (PSR pp. 23-24, ¶ 121.)

- In September 2019, Defendant hit F.S. in the arms and ribs, slapped her in the face, pulled her hair, scratched her arms, and pulled out a utility knife and threatened to cut up her face after she went out on a date with another man. (PSR p. 29, ¶¶ 152-53.)

- During a road trip in the summer of 2021, Defendant hit F.S. in the arms, ribs, legs, and face as a means to punish K.R. (PSR pp. 30-31, ¶¶ 162-64.) Two of Defendant's minor children were in the vehicle during Defendant's abuse of F.S. (*Id.* pp. 29-30, ¶ 156.)

- Later in the summer of 2021, Defendant hit F.S., tackled her to the ground, and placed his forearm around F.S.'s neck, resulting in F.S. seeking medical treatment at a hospital after she escaped Defendant. (PSR pp. 31-32, ¶¶ 165-69.)

- Between February 2021 and January 2022, Defendant bit, hit, and choked H.C. when she refused to give Defendant money she earned from commercial sex acts. (PSR p. 38, ¶ 206.)

- On Valentine's Day 2016, Defendant struck C.O. in the head with his fists and put a lit blunt out on the corner of her eye. (PSR p. 41, ¶ 218.)

Defendant's threats and violence caused victims to fear he would retaliate against them if they did not comply. *See, e.g.,* PSR pp. 42-43, ¶ 230 (C.O. stated that she, K.R.,

8

and F.S. believed in 2022 that Defendant would be released very soon from the Polk County Jail and they feared Defendant would be physical if they were not helpful to him.)

The amount of harm and suffering Defendant inflicted upon his victims is incalculable. Defendant repeatedly committed hands-on sexual abuse of each of the minor victims in this case, and over the course of years for Minor Victim 3. (PSR p. 17-20, ¶¶ 83, 84, 92-101.) From the ages of 13 to 18, Minor Victim 3 recalled that Defendant caused her to engage in vaginal, oral, or anal sex "[a] lot of times. I can't really put a number on it." (*Id.* p. 19, ¶ 98.) Such abuse can only be described as heinous and depraved. Numerous victims suffered to the point that they tried to escape Defendant by moving away from the Des Moines area. K.R. moved to Texas, F.S. moved to Bedford, H.G. moved to Louisiana, and C.O. moved to another city in Iowa. (PSR pp. 24, 32, 34-35, 41, ¶¶ 122, 170, 189, 223.) Defendant stalked victims such as K.R. and H.C., *see* PSR pp. 24, 39, 40, ¶¶ 122, 211, and 212, and tricked others, such as H.G., into returning, *see Id.* pp. 34-35, ¶ 189.

Particularly sickening was the way Defendant used his relationships with women to access minor children for his depraved sexual appetites. Defendant used his relationship with K.D. and S.W. to develop his sexual relationship with Minor Victim 2 and Minor Victim 3, respectively. Defendant was able to engage in sex acts with Minor Victim 2 and Minor Victim 3 through his relationships with the children's mothers. F.S. was so concerned about Defendant potentially doing the same to her daughter that Defendant defensively asked, "y do u think I wanna fuck [your

9

daughter]." (PSR pp. 15, 17, 21, ¶¶ 63, 77, 108-110.) Indeed, Defendant told Minor Victim 3 at that time that he had engaged in "prior sexual relationships with mothers and their daughters," and Defendant made repeated comments to women about engaging sex acts or a relationship with minor females. (*Id.*)

The nature and circumstances of Defendant's offenses are highly aggravating and warrant a guideline-sentence of 480 months'.

### B. *History and Characteristics; The Need to Protect the Public*

Defendant's criminal history further confirms the need for the Court to impose a sentence of 480 months' imprisonment. Without counting status points, Defendant has a criminal history score of 21, for a category VI. Because only 13 points are necessary for a Category VI, the sentencing guidelines fail to adequately capture the seriousness of Defendant's criminal history.

Defendant's criminal history conclusively shows Defendant has an established record of violent, assaultive, and dangerous behavior. It also reveals that the numerous victims documented in the Offense Conduct section of the PSR are not Defendant's first; rather, he has been engaged in victimization for decades.

- In 1998, at the age of 21, Defendant was convicted of armed robbery, aggravated assault, and conspiracy to commit armed robbery after he and his codefendants used a metal pipe to rob a business of $4,800. (PSR, p. 59, ¶ 350.)
- In 2016, Defendant was convicted in Nebraska of third-degree domestic assault and in 2018, he was convicted in Iowa of domestic abuse assault causing bodily injury and second-degree harassment. (PSR pp. 62-63, ¶¶ 354-55). For both

offenses, the Defendant's now-wife was the victim. (*Id.*) During both offenses, law enforcement observed visible injuries on the victim. (*Id.*) However, in 2018, the victim reported the abuse was ongoing, that Defendant had beat her for an hour on that occasion, and that Defendant had threatened to kill her after she had told him she had wanted to leave him. (*Id.* p. 63, ¶ 355.) The victim suffered a ruptured eardrum, cuts to her face, a swollen eye, and bruising. (*Id.*) The Defendant and victim's minor child was present during the assault. (*Id.*)

- In 2021, Defendant was convicted of third-degree attempted burglary and fourth-degree criminal mischief after he attempted to break into N.N.'s apartment by kicking the door and damaging it. (*Id.* p. 64, ¶ 358.) The victim reported that Defendant had threatened her and her son in the past. (*Id.*) In 2022, Defendant was convicted of stalking N.N. after he violated a protective order by videochatting N.N., during which Defendant threatened he was "coming for her" and threatened to kill her 12-year-old son. (*Id.* p. 65, ¶ 360.)

The Criminal History section of the PSR leads the reader to one conclusion: the danger Defendant poses to the public is real.

Defendant's criminal history demonstrates that less-restrictive corrective measures, such as supervised release, are insufficient to protect the public from his criminal actions. By the government's count, on a total of seven occasions, Defendant has either violated court-supervised release, had it revoked, or unsuccessfully discharged from it. (PSR pp. 58-62, ¶¶ 349, 350, 352, 353, 354.) A lengthy prison sentence is required to protect the public from Defendant.

Further insight into the Defendant's characteristics can be gleaned from his conduct while being detained at the Polk County Jail. Between July 2022 and August 2023, Defendant was found guilty of ten separate sets of jail violations. (PSR p. 7-8, ¶ 17(a)-(h).) Utilizing the jail messaging and phone call platforms, Defendant directed victims to retaliate against K.R. after K.R. sent Defendant a message referring to his sexual activity with Minor Victim 1. (PSR p. 44, ¶ 240, (instructing C.O. to "check" K.R.); p. 44, ¶ 241 (instructing F.S. to beat K.R.'s ass when F.S. next saw K.R.); p. 46, ¶ 247 (messaging K.R. "You're just too much, and before long someone will kill u for the treacherous things you do or the wreckless [sic] mouth you're so proud of."); p. 46-47, ¶ 248 (instructing H.G., C.O., and F.S. to each send K.R. the same message berating her). Defendant also threatened to harm his wife on jail calls. *See, e.g.,* PSR p. 47, ¶ 252 ("I'm a tell you this. I swear to God I put my freedom on it. You disrespect me again, I'm having niggas come through and shoot up your house."); p. 47, ¶ 253 (After Defendant's wife discusses divorcing Defendant, Defendant threatens to burn her Jeep and that, instead of sending his people to her house, he will send his people to her mother's house). Defendant's continued hounding of the victims from jail resulted in the government seeking, and the magistrate judge granting, a protective order prohibiting Defendant from contacting K.R., F.S., H.G., C.O., and Minor Victim 1 and restricting his contact with his wife. (PSR p. 48, ¶ 256.)

Defendant's behavior at the Polk County Jail warrants serious consideration by the Court. His behavior shows that measures that usually operate to deter others from engaging in criminal activity, such as the recording of communications, have no

effect on Defendant. Defendant's drive to victimize is such that, given any opportunity or opening, Defendant will use it to prey upon others, even when detrimental to his own self-interest. This characteristic renders Defendant particularly dangerous. A sentence of 480 months' imprisonment is necessary to address Defendant's established record of victimization and to protect the public from Defendant.

> C. *The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.*

The Court has reviewed the offense conduct in this case as well as the victim impact statements. Unquestionably, Defendant's criminal conduct has left a wake of destruction, trauma, and pain. Any sentence less than a guideline-sentence of 480 months' imprisonment would fail to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 480 months' imprisonment.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/Amy Jennings*
Amy Jennings

*/s/ Kyle J. Essley*
Kyle J. Essley
Assistant United States Attorneys
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Amy.Jennings2@usdoj.gov
        Kyle.Essley@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on October 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record by:
_____U.S. Mail  _____ Fax  _____Hand Delivery

  X    ECF/Electronic filing  _____Other means

UNITED STATES ATTORNEY
By: */s/Janna Colvin, Paralegal Specialist*